UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT COWAN,

        Petitioner,               Case Number: 2:19-11917
                                                HONORABLE SEAN F. COX

v.

ERICA HUSS,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Robert Cowan filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his convictions for armed robbery, Mich. Comp. Laws § 750.529, and possession of a firearm during the commission of a felony. Mich. Comp. Laws § 750.227b. Cowan, who is proceeding *pro se*, challenges his convictions on the grounds that he received ineffective assistance of trial and appellate counsel and that the state courts erred in failing to hold an evidentiary hearing. Respondent argues that Cowan's claims are meritless and that his third claim is procedurally defaulted. For the reasons set forth below, the Court denies the petition and denies a certificate of appealability.

**I.**    **Background**

The Michigan Court of Appeals summarized the evidence presented at trial as follows:

Defendant's convictions arise from a November 15, 2013, armed robbery inside a home in Port Huron where the following victims were present: David Scott, Matthew Miles, Kristopher McConnell, Susan Jackson, and Samantha

Milligan. Jackson is the mother of Scott and McConnell, and Milligan was McConnell's fiancée. Miles was a friend who was visiting.

Jackson, Scott, McConnell, Miles, and Milligan all testified that they were at 923 Bancroft Street on the evening of November 15, 2013. McConnell testified that between 5:30 and 5:45 p.m., he walked down to the corner store to buy some drinks and then returned home when an armed man suddenly entered the house and stepped into the front room. Scott described the man as black, tall, and stocky, and said he was wearing a coat with a fur-trimmed hood. He identified defendant as the robber. McConnell described the man as a "larger black male" and said he was wearing a dark-colored coat with a fur-trimmed hood and an orange cap or beanie. He identified defendant as the robber. Miles described the man as a "big black guy" but "didn't see his face," remarking that "[i]t was more like he had a mask on." Miles could not identify defendant as the robber. Milligan described the perpetrator as "big" and said he was wearing a dark-colored hoodie that was "heavy like a coat," with a fur-trimmed hood, a yellow or orange "winter beanie," jeans, and black and red or black and green shoes. Miles identified defendant as the perpetrator. Jackson testified that the perpetrator was black and wearing a green coat with "fuzz" around the hood. Jackson could not identify defendant as the perpetrator.

... Scott testified that defendant ..."pistol whipped" Miles by striking him on top of the head with the gun and forced him "against the wall with the rest of us." Defendant then "went through everybody's pockets and wanted everybody's phone and wallet or anything like that."

Scott testified that ... "another skinny black gentleman came to the back sliding door." The man had covered his face with his shirt. The man started going through the house "looking for stuff." ... Scott ... was able to turn his head and sneak glances now and then. Eventually the two men left by the back door. Scott said that once he realized the men had left, he and McConnell ran after the perpetrators. Scott ran down to the corner of Bancroft and 10th Streets, but did not see anyone. He returned home to wait for the police.

***

McConnell testified that he stopped at the corner store to inquire about surveillance cameras. The clerk told him "that he did have a couple of cameras; that to send a detective over, an officer over to look at it." The clerk from the store testified to downloading the video footage onto a flash drive and officers testified to collecting the flash drive and downloading the files onto

a departmental computer. ... Three or four people got out of the vehicle. A camera inside the store showed McConnell making a purchase. The next person in line turned in a lottery ticket. That person was wearing "a puffier, bigger coat with fur around the hood and a hoodie." He also had on a yellow cap and a brightly-colored garment underneath the darker-colored coat. The clerk recognized that person as a regular customer and identified him as defendant. The video footage was admitted into evidence and played for the jury.

The police attempted to conduct a corporeal lineup, but defendant refused to participate and persuaded other inmates who had been selected not to participate either. ... The victims were called in for a photographic lineup instead. Scott, McConnell, and Milligan were each shown arrays in which defendant's photograph was in a different position. Attorneys for the prosecution and the defense approved the photographs used in the arrays.

Scott testified that the gunman's hood was up, but he was not wearing a mask and Scott was able to see his face. Scott initially identified a man named Jamal as the gunman. After reviewing the array more carefully, he changed his mind and identified defendant. He rated the accuracy of his identification as "an 8 or a 9" on a scale of 1 to 10.

McConnell testified that the gunman's hood was up, but he was not wearing a mask and McConnell was able to see his face. McConnell saw two "very similar" people who might be the gunman. He was not able to identify defendant because the picture showed him "sucking in his bottom lip" and McConnell could not be sure he was the one. Upon seeing defendant at the preliminary examination, McConnell recognized him as the gunman. He was able to identify him by his prominent jaw and distinctive nose.

Milligan testified that the gunman's hood was up, but he was not wearing a mask and she was able to see his face. She also identified a man named Jamal as the gunman and said she was 85-percent sure her identification was correct. Upon seeing defendant at the preliminary examination, Milligan got "a feeling ... in the pit of [her] stomach" and "just knew" he was the gunman. She was 100 percent sure of her identification of defendant.

Jackson testified that the gunman was not wearing a mask, but she got such a brief glimpse of him that she could not identify him and thus did not attend the lineup.

> Miles testified that the gunman and his companions were all wearing masks that covered their faces below the eyes. He did not attend the lineup because his car broke down that day; he did not testify at the preliminary examination.
>
> McConnell testified that the night before the preliminary examination, two women came to the house "asking me what they could give me to not show up in court." He said, "[t]hey offered me anything I wanted not to come to court." Specifically, "[t]hey offered me my PlayStation 3 back and an additional $300 to pay back what was taken." The same two women appeared at the preliminary examination; one was defendant's sister, Christina Badger. McConnell pointed them out to an officer and told him "that Ms. Badger said that she could get his things back." One officer testified that Badger had once owned a 2002 Mercury Mountaineer; the police were unable to locate that vehicle. Another testified that Badger's son had been seen driving a Ford Explorer.

*People v. Cowan*, No. 321937, 2015 WL 6161639, at *1-3 (Mich. Ct. App. Oct. 20, 2015).

Following a jury trial in St. Clair County Circuit Court, Cowan was convicted of armed robbery, Mich. Comp. Laws § 750.529, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. The jury acquitted defendant of first-degree home invasion, Mich. Comp. Laws § 750.110a(2), and conspiracy to commit both armed robbery and home invasion, Mich. Comp. Laws § 750.157a. *Id*. at *1. On April 7, 2014, Cowan was sentenced as a second habitual offender to 15 to 40 years for the armed robbery conviction and two years for the felony-firearm conviction.

Cowan filed an appeal in the Michigan Court of Appeals and raised two claims: (i) his defense attorneys were ineffective for failing to present an expert witness on the unreliability of eyewitness identification; and (ii) his sentence was improperly increased based upon facts not found by a jury. Cowan also asked the court of appeals to remand the case for an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436 (1973). The

Michigan Court of Appeals remanded the case to allow Cowan to move for a new trial with respect to his ineffective assistance of counsel claim and directed the trial court to conduct an evidentiary hearing. *See People v. Cowan*, No. 321937 (Mich. Ct. App. Feb. 11, 2015).

On remand, the trial court held an evidentiary hearing during which Cowan presented the testimony of his court-appointed attorney, his retained attorney, and an expert witness. The trial court held that Cowan failed to show that his attorneys were deficient and denied the motion for a new trial. *See* 4/8/2015 Op. & Ord. *People v. Cowan*, No. 12-003248-FC (ECF No. 11-11, PageID.569). The case was then returned to the Michigan Court of Appeals where Cowan filed a supplemental *pro se* brief raising two additional claims: (i) he was denied his right to a fair and impartial probable cause determination because the prosecution filed an untimely notice to seek enhancement of sentence; and (ii) the pretrial photo lineup was unduly suggestive.

The Michigan Court of Appeals, in an unpublished opinion, granted Cowan relief on his sentencing claim, remanding the case for sentencing proceedings under *People v. Lockridge*, 498 Mich. 358 (2015). *Cowan*, 2015 WL 6161639 at *6 . In all other respects the Michigan Court of Appeals affirmed Cowan's convictions. *Id.* The Michigan Supreme Court denied leave to appeal. *People v. Cowan*, 499 Mich. 970 (Mich. 2016).

Cowan filed a motion for relief from judgment in the trial court, which the trial court denied. *See* 5/18/2017 Op. & Ord., *People v. Cowan*, No. 13-003248 (ECF No. 11-13, PageID.621-623). The Michigan Court of Appeals and Michigan Supreme Court denied Cowan leave to appeal the trial court's decision. *See People v. Cowan*, No. 340661 (Mich.

Ct. App. March 12, 2018); *People v. Cowan*, 503 Mich. 887 (Mich. Oct. 30, 2018).

Cowan then filed the pending habeas corpus petition, raising these claims:

I. Petitioner was denied his Sixth Amendment right to the effective assistance of counsel where his trial attorney failed to retain and present an expert witness on the unreliability of eyewitness identification.

II. Petitioner was deprived of his right to effective assistance of counsel on his appeal of right provided by the Sixth and Fourteenth Amendments to the United States Constitution, where appellate counsel failed to raise and investigate prosecutorial misconduct. Not challenging the misconduct and failing to raise the issue on direct appeal caused petitioner to suffer severe prejudice by counsel's deficient performance.

III. The state courts abused their discretion by refusing to hold an evidentiary hearing to expand the record on ineffective assistance of appellate counsel and the perjured testimony and evidence that was allowed into the trial proceeding, violating petitioner's Fifth, Sixth, and Fourteenth Amendment rights to the United States Constitution.

**II.  Standard of Review**

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of

6

law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Further, "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

A state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**III.   Discussion**

### A. Ineffective Assistance of Trial Counsel

In his first claim for relief, Cowan argues that habeas relief should be granted because defense counsel was ineffective in failing to present an expert witness in eyewitness identification.

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. In order to establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

The standard for obtaining habeas relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (*quoting Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

After remanding to the trial court for an evidentiary hearing, the Michigan Court of Appeals denied Cowan's ineffective assistance of counsel claim. The court of appeals

considered the evidentiary hearing testimony of Cowan's defense attorney and an expert witness. Defense counsel testified that she recognized that eyewitness identification was an issue in this case, but concluded it was unnecessary to consult or seek funds to obtain an expert witness. *Cowan*, 2015 WL 6161639 at *4. Defense counsel explained that, because her review of the police reports and preliminary examination clearly showed numerous problems with the identification testimony she did not believe an expert would "bring something to the case that maybe a jury might have an issue with understanding." (ECF No. 11-10, PageID.426.) She also believed that a flawed police investigation was a bigger issue than the identification issue. (*Id.* at 424-26.) Finally, defense counsel was hesitant to call an expert witness because she felt that testimony would conflict with evidence that one of Cowan's relatives tried to persuade a prosecution witness not to testify by offering to return his property. (*Id.* at 432-34.) In sum, defense counsel concluded that:

> [T]he problems with the identification testimony could be elicited through cross-examination of the victims and could be understood by the jury without an expert's assistance because they were 'obvious.' An added consideration was the fact that presenting an expert to explain 'a fairly obvious issue' and 'point out the same things that I've pointed out' creates a risk offending, boring, or turning off the jury.

*Cowan*, 2015 WL 6161639, at *4.

The Michigan Court of Appeals also considered the testimony of Colleen Seifert, Ph.D., who was qualified as an expert in the field of memory as it relates to eyewitness identifications. Seifert testified that, if she had been called by the defense, she would have explained to the jury that memory does not always work the way people think it works; for

9

example, if you see a face just one time, you are "unlikely to remember that face again." (ECF No. 11-10, PageID.479.) Also, the stressful circumstances of the robbery would have made it less likely that the victims would have focused on the perpetrator's face. (*Id.*) Seifert also would have explained to the jury how the photographic lineup could have tainted the victims' identifications. (*Id.* at 482-487.)

The Michigan Court of Appeals concluded that counsel's decision not to call an expert in eyewitness identification testimony was not an unreasonable trial strategy and did not prejudice Cowan. The state court reasoned:

> In this case, ... [defense counsel's] failure to consult and retain an expert was not objectively unreasonable under the circumstances of this case, where the potential unreliability of the witnesses' identification testimony was effectively examined during the trial. Only three of the five witnesses, Scott, McConnell, and Milligan, identified defendant as the gunman. Thus, the jury was free to consider that two of the witnesses could not make a positive identification. Of the three witnesses who claimed to have seen the gunman's face, Scott and Milligan initially identified the wrong man at a photographic lineup. Milligan was almost certain of her identification of the wrong man. Scott changed his mind and identified defendant, but admitted that he was not certain of his identification. McConnell was unable to identify anyone at a photographic lineup. McConnell and Milligan, the two witnesses who did not identify defendant in the photographic lineup, first identified him in court.
>
> An expert could not have opined on whether the eyewitness identifications were right or wrong. The most she could have done was give the jury things "to consider when they're thinking about whether the witness is accurate." However, defense counsel was able to do that by cross-examining the witnesses about their uncertainties and wavering identifications and by highlighting those matters during closing argument. Counsel thoroughly presented and explored the problems inherent with the witnesses' identifications of defendant and the jury was free to consider the uncertainty and inconsistencies in the testimony in its credibility determinations. In addition, counsel advanced the theory that the investigation was inadequate and determined that this theory was stronger than the issues involving the

> eyewitnesses. Given counsel's thorough cross-examination of the witnesses and pursuit of alternative defense theories, we cannot conclude that her failure to present expert testimony fell below an objective standard of reasonableness or deprived defendant of a substantial defense.

Cowan, 2015 WL 6161639, at *6-7.

The Michigan Court of Appeals' decision is not contrary to or an unreasonable application of controlling federal law. The Supreme Court has recognized that eyewitness identification carries certain dangers such as unreliable memory or perception. *United States v. Wade*, 388 U.S. 218, 235 (1967); *see also Jackson v. Bradshaw*, 681 F.3d 753, 762 (6th Cir. 2012) (recognizing that expert testimony on eyewitness identification is "universally recognized as scientifically valid and of aid to the trier of fact"). Yet "[t]he selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'" *Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (quoting *Strickland*, 466 U.S. at 690). The Sixth Circuit has held that a trial attorney's decision not to present expert testimony on eyewitness identification is not unreasonable where potential weaknesses in the eyewitnesses' identification were demonstrated through cross-examination and closing arguments. *Jackson*, 681 F.3d at 762-63. "[N]o precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011).

In this case, defense counsel challenged eyewitness testimony through

cross-examination. She adeptly exposed the many inconsistencies in the eyewitnesses' testimony, including that two witnesses originally identified someone else as the perpetrator. Applying AEDPA's doubly deferential standard of review, it was not unreasonable for the Michigan Court of Appeals to conclude that counsel's decision to rely on cross-examination rather than retaining an expert was within the wide range of reasonable defense strategies and that Cowan was not prejudiced by defense counsel's decision. The Court denies relief.

### B. Ineffective Assistance of Appellate Counsel

Cowan claims that his appellate attorney was ineffective in failing to raise a prosecutorial misconduct claim on direct appeal. Specifically, Cowan argues that the prosecutor knowingly presented perjured testimony by eliciting testimony from police officers that they removed a photograph of one person from the photographic lineup after defense counsel objected to the picture. Cowan maintains that the photograph was not removed from the lineup.

The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citations and internal quotations omitted). This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prove this claim, a defendant must show that (1) the evidence the prosecution presented was false; (2) the prosecution knew it was false; and (3) the false evidence was material. *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir. 1992).

The trial court, the last state court to issue a reasoned opinion addressing this claim, held that appellate counsel exercised reasonable professional judgment in deciding which issues to present on direct appeal. (ECF No. 11-13, PageID.622.) The trial court noted that a December 10, 2014 letter from appellate counsel to Cowan showed that "appellate counsel carefully considered the issue of the allegedly tainted photo array and considered the issue's weaknesses." (*Id.*) The trial court concluded that appellate counsel's decision was a deliberate and tactical one. (*Id.*)

The state court's opinion was not contrary to or an unreasonable application of Supreme Court precedent. First, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000). Cowan fails to show that the officers' testimony was false. In fact, the Michigan Court of Appeals addressed this fact on direct review in the context of addressing Cowan's claim that the photo array was unduly suggestive. The state court held "contrary to defendant's argument, the record supports that the photographic array contained only photographs approved by defense counsel." *Cowan*, 2015 WL 6161639, at *10. Further, even assuming that the photograph was not removed from the array, Cowan presents no evidence that the prosecutor *knowingly* presented false evidence. His prosecutorial claim, therefore, lacks merit.

Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A]

13

petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal). Habeas relief is denied.

### C. State-Court Evidentiary Hearing

Finally, Cowan argues that the St. Clair County Circuit Court improperly denied him an evidentiary hearing on collateral review. He argues that the trial court should have held a hearing to inquire into Cowan's allegation that two police detectives testified falsely about the photo array. Respondent argues that this claim is procedurally defaulted and meritless. Procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). It may be more economical for the habeas court to simply review the merits of the petitioner's claims. *Lambrix*, 520 U.S. at 525. In the present case, the Court deems it more efficient to proceed directly to the merits.

"[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir.2007). A state court's failure to grant an evidentiary hearing in post-conviction proceedings is not a claim upon which habeas relief may be granted. *Cornwell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009) (holding that petitioner's claim that the state court

improperly denied him an evidentiary hearing is not cognizable in habeas corpus proceedings). The Court denies relief on this claim.

## IV.    Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## V.    Conclusion

The petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**SO ORDERED**.

                                                  s/Sean F. Cox
                                                  SEAN F. COX
                                                  UNITED STATES DISTRICT JUDGE

Dated: October 27, 2020